HIGGINS, Justice.
 

 This is an action by an administratrix to recover the sum of $3,000.06, alleged to be due by the defendant corporation, representing an advance made by her late husband to the commercial partnership of Templeman Bros;, which transferred its assets to Templeman Bros., Inc., the defendant corporation, which is said to have assumed the indebtedness and during the years 1931 and 1932 made payments on account thereof. The defendant denied that it assumed liability in the matter.
 

 There was judgment in favor of the plaintiff for the sum of $508.98, and the defendant appealed.'
 

 There is no longer any serious dispute that the plaintiff is not entitled to the sum of $3,000.06, as originally claimed. The record fully supports the trial court’s finding in that respect.
 

 Defendant complains of the correctness of the judgment on the ground that the plaintiff alleged a cause of action against the defendant based upon a loan which the defendant was said to have assumed, but was permitted to recover only after the trial court, over objection, permitted the suit to be converted into an action for an accounting between the parties. In short, that the plaintiff cannot sue upon one cause of action and recover upon another.
 

 While it is true that the plaintiff alleged in paragraph 2 of the petition that her husband advanced $3,100 to the partnership and that on June 16, 1927, the defendant corporation was organized for the purpose of taking over the business of the partnership as a going concern and assumed the indebtedness, it is also alleged in paragraph 4 that this indebtedness was reflected upon the corporation’s books, and in paragraph 7, that the defendant during the years of 1931 and 1932 made five payments on account aggregating $99.94. Paragraphs 9 and 10 read, respectively, as follows:
 

 “Par. 9. Petitioner avers specifically that on March 10, 1932, the ’ defendant herein addressed a letter to petitioner, enclosing a statement of the business of Templeman Brothers, Inc., in which letter and statement the said corporation acknowledged that it was indebted to said late George N. Templeman for the sum of Three Thousand Twenty-Five and 12/100 Dollars ($3,025.-12), which was the balance due on the above mentioned loan made by said late George N. Templeman to the said co-partnership, which was subsequently assumed by the defendant as aforesaid.
 

 “Par. 10. That in the statement above mentioned the defendant did not deduct from the amount acknowledged as being due to the late George N. Templeman, the pay
 
 *485
 
 ments made by the said corporation to George N. Templeman on February 29,1932, aggregating $25.06, and deducting this sum from the amount acknowledged as being due in said statement, there remains due to the succession of George N. Templeman, the sum of Three Thousand Dollars and Six Cents ($3,000.06).
 

 The statement of account furnished plaintiff by the defendant was annexed to and made a part of the petition.
 

 On the trial of the case on the merits, due to the fact that the widow was not familiar with the transactions, only the president, a brother of the deceased, the bookkeeper, and the auditor of the defendant corporation testified. The president, Mr. Robert N. Templeman, testified as follows:
 

 “Q. Now, I notice on this statement which appears to be dated March 10, 1932, this language: ‘In addition to the above our books show due George N. Templeman $3,025.12.’ Now if the corporation did not owe Mr. George Templeman that money, why did you put that in the account ?
 

 “A. Because I was not a bookkeeper and I did not understand the account.
 
 There was four accounts there that zvere interwoven, and I did not understand them except to this extent, there was a contingent account, there was a partnership account and there was two drawing accounts which were interzvoven,
 
 and
 
 in the contingent
 
 account there was some stuff that
 
 still
 
 was open. Therefore, I said those amounts there depended on the indebtedness of the * * * our indebtedness or the creditors, whether the creditors were satisfied, and
 
 there is still an amount open on the partnership hooks that has not heen settled.
 
 * * * (Italics ours.)
 

 “Q. Then in this statement to Mrs. Templeman, marked Plaintiff 2, you told her that your books showed there was due $4,851.05, is that correct?
 

 “A. I say here, ‘In addition to the above our books showed * * * ’ I don’t know anything about whether it is owing or not owing. That is exactly what I tried to tell you a while ago. There is a contingent account, a partnership account, a drawing account for him and for me, and it is all interwoven, and I still don’t know anything about it, and my intention in writing this letter was to let her know, and I as much as said so, that there was still things open that affected our creditors and there couldn’t be anything done on this even if it was owing, and very doubtful that anything * * * at that time if there would ever be anything, and there is still some things open on the contingent account. * * *
 

 “A. With the bookkeeper there at the time and myself, and I put those down as on the books. I did not say we owed it or did not. I did not know, because as I stated the things was so interwoven and the bookkeeper and auditor did not agree on it at the time.”
 

 This testimony was purely voluntarily given by the defendant’s witness.
 

 The administratrix, in bringing her action, specifically made the corporation’s statement of the account a part of her petition and therefore brought home to it that she was suing for the amount which the statement showed was due her deceased husband. When plaintiff predicated her ac
 
 *487
 
 tion also on the statement, the corporation, knowing that there were several accounts of the deceased, George N. Templeman, and that they were interwoven, was fully apprised of the fact that the widow, as administratrix of her husband’s estate, was claiming from the corporation the moneys that were due him. Hoviever, if those allegations of the petition were not broad enough to admit the proof under which plaintiff eventually recovered, certainly the president’s testimony, knowingly and deliberately given as a witness for defendant, enlarged the pleadings so as to include the issues thus raised. Wells et al. v. Blackman, 121 La. 394, 46 So. 437; Houston River Canal Co., Ltd., et al. v. Ried, 127 La. 630, 53 So. 887; and Fontenot v. Manuel, 46 La.Ann. 1373, 16 So. 182.
 

 The objection of counsel for the defendant that the item of $504.98 was not included in the amount of the alleged loan by the deceased, but was carried under a heading of “Current Liabilities” and, therefore,> was a separate and distinct item, came too late because of the previous testimony of defendant’s witness. The trial court, therefore, properly ruled that the pleadings had been enlarged and the objection came too late.
 

 The testimony of John F. Hartman, the auditor of the defendant corporation, established beyond any doubt that there was due the deceased the sum of $504.98, as reflected on the corporation’s books under the heading of “Current Liabilities.”
 

 Realizing that the evidence had completely demonstrated defendant’s liability for $504.98, the president of the defendant corporation testified that that was the balance due in an account set up by Temple-man Bros., as partners, to take care of any outstanding liabilities of the defunct partnership; and that there was probably due Krauss Bros, a sum between $1,500 and $3,000 representing an old claim against the partnership arising in 1926 or 1927, which was still outstanding. He admitted that a suit had never been filed to recover , this amount.
 

 The auditor testified that Robert N. Templeman, president of the defendant corporation, had personally withdrawn $544.02 from the contingent liability account in question and that no suit had ever been filed to recover the alleged claim by Krauss Bros. The manner in which Robert N. Temple-man treated this fund, and the manner in which the auditor and the bookkeeper construed the transaction, shows clearly that it was the opinion of all of these officers and employees of the company that the corporation owed the two former partners the balance in the reserve contingent account and that it should be equally divided between them.
 

 As far as the record is concerned, the outstanding bills alleged to be dire Krauss Bros, are ten or eleven years old and are therefore prescribed. If the defendant wishes to acknowledge these claims or pay them, it might do so, but certainly not to the, prejudice of the plaintiff as a creditor. She has an interest of $504.98 in the contingent fund and the defendant cannot pay prescribed claims with her money. Plaintiff as a creditor is entitled to urge a plea of prescription against the claims of Krauss Bros. R.C.C. art. 3466; Larthet v.
 
 *489
 
 Hogan, 1 La.Ann. 330; Girod v. Creditors, 2 La.Ann. 546; Succession of McGill, 6 La. Ann. 327; Blanchard v. Decuir, 8 La.Ann. 504; Succession of Dejean, 8 La.Ann. 505, and Jones v. Jones, 51 La.Ann. 636, 25 So. 368.
 

 Our attention has been called by counsel for the plaintiff to a typographical error in the judgment, the amount awarded being $508.98 instead of $504.98. This inadvertence will be corrected and, as Act No. 229 of 1910 gives us a discretion in assessing costs, they will be assessed against the defendant.
 

 It is, therefore, ordered, adjudged, and decreed that the judgment be amended by reducing the amount awarded from $508.98 to $504.98, and, as thus amended, the judgment appealed from is affirmed at appellant’s costs.